UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SOBEIDA CLAUDIO,<br>　　　Plaintiff,<br>　　　　v.<br>NANCY A. BERRYHILL, Acting Commissioner of<br>Social Security,<br>　　　Defendant. | No. 3:17-cv-1228 (MPS) |

RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of Sobeida Claudio's application for

disability insurance benefits. Ms. Claudio contends that the Administrative Law Judge ("ALJ")

erred in: (1) giving little weight to the opinions of several physicians whose reports are contained

in the record; (2) failing to consider the effect of all of her medically determinable impairments

in formulating her Residual Functional Capacity ("RFC"); and (3) concluding that although her

impairments prevent her performing her past relevant work, others jobs exist in significant

numbers in the national economy which the claimant can perform. I agree with Ms. Claudio that

the ALJ improperly applied the treating physician rule as to the opinions of one of her treating

physicians, and I am unable to conclude that this error was harmless. The case is therefore

REMANDED. I do not reach Ms. Claudio's remaining arguments urging reversal or remand.

I.　　Background

On May 23, 2011, Ms. Claudio filed an application for disability benefits for an alleged

disability. (ECF No. 19-2 at 2.)[1] A disability adjudicator in the Social Security Administration

---

[1] The parties did not submit a joint statement of facts. Instead, Ms. Claudio submitted
her own statement of facts, which the Commissioner accepted "with the exception of any
inferences, suggestions, or arguments contained therein . . . ." (ECF No. 22-2 at 1.) I therefore
draw chiefly upon Ms. Claudio's statement of facts and the record in setting out the background
to this case.

("SSA") denied her application and thereafter denied her request for reconsideration on May 4, 2012. (*Id.*) On July 30, 2013, Ms. Claudio appeared with counsel before ALJ Deirdre R. Horton, who subsequently denied her benefits. (*Id.* at 2-3). In February 2015, however, the Appeals Council for the SSA remanded the case back to the ALJ. (*Id.* at 3.)

Ms. Claudio then appeared again with counsel before ALJ Horton, who again denied her benefits. (*Id.*). The ALJ found that Ms. Claudio had the severe impairments of sciatica, mild degenerative joint disease causing right knee pain, obesity, and depression. (ALJ Decision, Tr. at 39.) The ALJ rejected the contention that Ms. Claudio suffered from severe ailments relating to her feet, hearing, hips, symptoms of carpal tunnel syndrome, or hypertension. (*Id.* at 40.) Next, the ALJ determined that Ms. Claudio did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, and had the following Residual Functional Capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit for 6 hours; stand and walk 4 hours; occasionally climb ramps and stairs; no climbing of ladders/ropes/scaffolds; occasional balancing; stooping; kneeling; crouching and crawling; she can perform short simply tasks and occasional detailed tasks; she can occasionally interact with the general public.

(*Id.* at 40, 42.) Finally, the ALJ determined that although Ms. Claudio lacked the ability to perform any past relevant work, there were jobs that "exist[ed] in significant numbers in the national economy that [she] can perform . . . ." (*Id.* at 46-47.) For these reasons, the ALJ concluded that Ms. Claudio was not disabled within the meaning of the Social Security Act. (*Id.* at 48.)

On May 25, 2017, the appeals council denied Ms. Claudio's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr.

at 1.)  This appeal followed.  Specific facts and portions of the ALJ's decision will be discussed

below as necessary.

**II.      Standard**

The Social Security Act establishes that benefits are payable to individuals who have a

disability.  42 U.S.C. § 423(a)(1).  "The term 'disability' means . . . [an] inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . ."  42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within

the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as

promulgated by the Commissioner.

The five steps are as follows: (1) the Commissioner considers whether the claimant is

currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether

the claimant has a "severe impairment" which limits his or her mental or physical ability to do

basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask

whether, based solely on the medical evidence, the claimant has an impairment listed in

Appendix 1 of the regulations.  20 C.F.R. § 416.920(a)(4).  If the claimant has one of these

enumerated impairments, the Commissioner will automatically consider that claimant disabled,

without considering vocational factors such as age, education, and work experience.  *Id.*  (4) if

the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite

the claimant's severe impairment, he or she has the residual functional capacity to perform his or

her past work; and (5) if the claimant is unable to perform his or her past work, the

Commissioner then determines whether there is other work the claimant could perform.  *Id.*  To

be considered disabled, an individual's impairment must be "of such severity that he is not only

unable to do his previous work but cannot . . . engage in any other kind of substantial gainful

work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears

the burden of proof on the fifth step, while the claimant has the burden on the first four steps. 20

C.F.R. § 416.920(a)(4).

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is

performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make

a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability

benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather,

the court's function is to ascertain whether the correct legal principles were applied in reaching

the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial

evidence, that decision will be sustained, even where there may also be substantial evidence to

support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than

a mere scintilla or a touch of proof here and there in the record." *Id.*

III.   **Discussion**

   **A. Treating Physician Rule**

   Ms. Claudio contends that the ALJ erred in her application of the "treating physician

rule" as to the opinions of Ms. Claudio's treating physicians, Drs. Martin Perlin and Tina Chieco.

(ECF No. 19-2 at 14.) Under the treating physician rule, "the opinion of a claimant's treating

physician as to the nature and severity of the impairment is given controlling weight so long as it

is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."[2] *Burgess v. Astrue*, 537

F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted).  "The regulations

further provide that even if controlling weight is not given to the opinions of the treating

physician, the ALJ may still assign some weight to those views, and must specifically explain the

weight that is actually given to the opinion."  *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D.

Conn. 2009).  The Second Circuit has made clear that:

> To override the opinion of the treating physician . . . the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and

alterations omitted).  "The failure to provide good reasons for not crediting the opinion of a

claimant's treating physician is a ground for remand."  *Id.*

### i.    Dr. Martin Perlin

---

[2]  Although the SSA recently adopted regulations effectively abolishing the treating physician rule, it did so only for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources . . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.").  Since Ms. Claudio filed her claim before March 27, 2017, I apply the treating physician rule under the previously existing regulations.  *See Tanya L., Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:17-CV-136, 2018 WL 2684106, at *4 n. 1 (D. Vt. June 5, 2018) ("Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c).").

Ms. Claudio chiefly argues that the ALJ erred in her application of the treating physician rule to the opinions of Ms. Claudio's treating internist, Dr. Martin Perlin.  (ECF No. 19-2 at 14-15.)   The ALJ gave "little weight" to the following opinions from Dr. Perlin: (1) a March, 2012 opinion that Ms. Claudio suffered from osteoarthritis and depression (Tr. at 525-28); (2) an August, 2012 Medical Report for Incapacity noting that Ms. Claudio suffered from "↑ BP, migraine[s], depression, [and] sciatica" (*id.* at 898); (3) a February, 2013 Medical Report for Incapacity noting that Ms. Claudio suffered from sciatica, osteoarthritis, and migraine headaches (*id.* at 584); (4) a June, 2013 Physical Medical Source Statement noting that Ms. Claudio's maladies would cause her to be absent from work more than four days per month (*id.* at 648); and (5) letters from October, 2014 and November, 2015 opining that Ms. Claudio was "permanently disabled due to her chronic and severe conditions" including "hyperlipidemia, hypertension, sciatica, insomnia, depression/anxiety, osteoarthritis, headache/migraine, dysphagia, peripheral neuropathy and GERD" (*id.* at 694, 1167).  (*See* ALJ Decision, Tr. at 45-46.)

The ALJ discounted Dr. Perlin's opinions because: (1) Dr. Perlin's treatment notes did not substantiate and were inconsistent with his findings (*see, e.g.*, ALJ Decision, Tr. at 45-46 ("Dr. Perlin's treatment notes do not substantiate any of his conclusory findings that the claimant is disabled and therefore, the undersigned gives these opinions little weight" and "[H]is treatment notes show all normal findings"); (2) Dr. Perlin's opinions contained in the record were "vague" (*see id.* at 45 (noting in relation to form completed by Dr. Perlin that he "provided no support for his findings and his 'check-off' style completion of the form was vague"); (3) one of the forms was not completed by Dr. Perlin (*id.* at 45-46 ("The August 2012 form is signed by Dr. Perlin,

but it does not appear that he completed the form himself.""))[3]; and (4) Dr. Perlin's statements

that Ms. Claudio was permanently disabled were "not medical opinions, but rather an

administrative finding dispositive of a case . . . reserved to the Commissioner" (*id.* at 46).

In lieu of relying on the opinions mentioned above, the ALJ noted in her decision that she

had "given great weight to the State agency opinion at Reconsideration, and ha[d] generally

adopted [those] findings," with certain exceptions irrelevant to the case at hand. (ALJ Decision,

Tr. at 46.) The State agency opinion at reconsideration, which was signed by Dr. Antonio

Medina and Disability Adjudicator Gina Longo, concluded that Ms. Claudio was not disabled.

(Tr. at 174.) It further noted that she was capable of occasionally lifting twenty pounds,

frequently lifting ten pounds, standing or walking (with normal breaks) for a total of four hours,

sitting (with normal breaks) for "[a]bout [six] hours in an [eight] hour workday," and pushing or

pulling objects. (Tr. at 169-70.)

I conclude that the ALJ's decision not to give controlling weight to Dr. Perlin's opinions

was supported by substantial evidence. An ALJ must only accord a treating physician's opinion

controlling weight if it is "well-supported by medically acceptable . . . techniques and . . . not

inconsistent with the other substantial evidence in [the record.]" *Lesterhuis v. Colvin*, 805 F.3d

83, 88 (2d Cir. 2015) (quoting 20 C.F.R. § 404.1527(c)) (internal quotation marks omitted). The

record contains substantial evidence that Dr. Perlin's opinions failed to meet this standard. First,

as the ALJ noted in her decision, Dr. Perlin's opinions concerning the plaintiff's limitations are

not supported by his treatment notes, or, for that matter, any explanation. For example, Dr.

---

[3] The ALJ does not specify how she reached this determination regarding the form's authorship or its significance to her determination to assign little weight to the opinions expressed therein. The form in question appears to have been stamped with Dr. Perlin's name and title, in addition to having been filled out by hand. (*See* Tr. at 901.) There does not appear to be any indication, however, that Dr. Perlin did not complete the form.

Perlin stated that the plaintiff suffered from severe sciatica and a variety of other physical ailments in two medical reports for incapacity that he filled out on behalf of the plaintiff; his treatment notes, however, uniformly note that the plaintiff's gait and strength were normal throughout his treatment of her. (*Contrast* Tr. at 578 (January, 2013 report from Dr. Perlin noting Ms. Claudio was incapable of working due to "severe sciatica"), 694 (October, 2014 letter from Dr. Perlin noting that Ms. Claudio suffered from hyperlipidemia, hypertension, sciatica, insomnia, depression/anxiety, osteoarthritis, headache/migraine, dysphagia, peripheral neuropathy, and gastroesophageal reflux disorder ("GERD")), 1168 (January, 2016 letter from Dr. Perlin stating the same) *with, e.g.*, Tr. at 438 (July, 2011 report from Dr. Perlin noting that the plaintiff's posture, gait, and muscle strength were normal), 488 (December, 2011 medical report from Dr. Perlin noting the same), 490-91 (January, 2012 medical report from Dr. Perlin noting the same), 539-40 (April, 2012 report from Dr. Perlin noting the same), 547-48 (June, 2012 report from Dr. Perlin noting the same), 555-56 (August, 2012 report from Dr. Perlin noting the same), 561-62 (November, 2012 report from Dr. Perlin noting the same), 568-69 (January, 2013 report from Dr. Perlin noting the same), 1118-19 (March, 2013 medical report from Dr. Perlin noting the same), 1101-02 (August, 2013 medical report from Dr. Perlin noting the same), 1095-96 (November, 2013 medical report from Dr. Perlin noting the same), 1092-93 (January, 2014 medical report from Dr. Perlin noting the same), 1084-85 (March, 2014 medical report from Dr. Perlin noting the same), 1080-81 (July, 2014 medical report from Dr. Perlin noting the same), 1067-68 (October, 2014 medical report from Dr. Perlin noting the same), 1063-64 (January, 2015 medical report from Dr. Perlin noting the same), 1059-60 (July, 2015 medical report from Dr. Perlin noting the same).)

Second, Dr. Perlin's opinions in the record consist of a vast number of differing diagnoses that appear to have varied each visit. (*See, e.g.*, Tr. at 531 (July, 2011 report from Dr. Perlin noting Ms. Claudio suffered from edema and feeling of head fullness), 535 (December, 2011 report from Dr. Perlin noting Ms. Claudio suffered from hypertension and osteoarthritis in her lower legs), 538 (January, 2012 report from Dr. Perlin noting Ms. Claudio suffered from depressive disorder and hypertension), 540 (April, 2012 report from Dr. Perlin noting Ms. Claudio suffered from hypertension), 545 (May, 2012 report noting from Dr. Perlin noting Ms. Claudio suffered from sciatica and osteoarthritis), 548 (June, 2012 report from Dr. Perlin noting that Ms. Claudio suffered from osteoarthritis), 552 (July, 2012 report from Dr. Perlin noting that Ms. Claudio suffered from hypertension), 556 (August, 2012 report from Dr. Perlin noting that Ms. Claudio suffered from sciatica and migraine headaches), 559 (October, 2012 report from Dr. Perlin noting that Ms. Claudio suffered from sinusitis), 562 (November, 2012 report from Dr. Perlin noting that Ms. Claudio suffered from sciatica, osteoarthritis, and hypertension), 569 (January, 2013 report from Dr. Perlin noting that Ms. Claudio suffered from osteoarthritis).) As the ALJ noted in her opinion, none of these apparently inconsistent diagnoses appear to be supported with objective findings. These factors support the ALJ's decision to give Dr. Perlin's opinion less than controlling weight. *See Rusin v. Berryhill*, 726 Fed. App'x 837, 840 (2d Cir. 2018) (concluding ALJ did not err in declining to afford treating physician's opinions controlling weight in part because physician's opinion was inconsistent with his treatment notes and diagnostic observations).

The analysis does not end here, however, as I must determine whether the ALJ provided adequate reasoning for according "little weight" to Dr. Perlin's opinions. *See Greek*, 802 F.3d at 375 ("[E[ven when a treating physician's opinion is not given controlling weight, SSA

regulations require the ALJ to consider several factors *in determining how much weight the opinion should receive*." (emphasis added).). "In the Second Circuit, 'all of the factors cited in the regulations' must be considered to avoid legal error." *Twigg v. Comm'r of Soc. Sec.*, No. 3:16CV1500 (AWT), 2018 WL 855560, at \*2 (D. Conn. Feb. 13, 2018) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). For the reasons set forth below, I conclude that the ALJ properly considered all of the *Greek* factors in providing her weight assignment for Dr. Perlin's opinions.

As an initial matter, the ALJ considered the "frequen[c]y, length, nature, and extent of treatment" that Dr. Perlin provided to Ms. Claudio. *Greek*, 802 F.3d at 375. Indeed, the ALJ cited most of Dr. Perlin's treatment reports in her decision and set out the shortcomings therein in a comprehensive manner. (*See* ALJ Decision, Tr. at 44-46.) Second, the ALJ considered the full "amount of medical evidence supporting [Dr. Perlin's] opinion[s]." *Greek*, 802 F.3d at 375. As noted above, the ALJ cited most of this evidence in her decision—including the "longitudinal medical evidence" from Dr. Perlin's own treating notes—and walked the reader through Dr. Perlin's vague and conclusory opinions. (*See* ALJ Decision, Tr. at 43-46.) Third, the ALJ considered the consistency of Dr. Perlin's opinions with the remaining medical evidence. *Greek*, 802 F.3d at 375. As noted previously, the ALJ correctly concluded that Dr. Perlin's opinions were inconsistent with his own records, along with other evidence in the record. (*See* ALJ Decision, Tr. at 46 ("Dr. Perlin's inconsistent reports do not offer much probative value and are unsupported by his own records as well as the other evidence in the record.).) Finally, the ALJ also considered Dr. Perlin's specialty, which is internal medicine. (*See id.* at 43 (referring to the "treatment notes of the claimant's treating internist, Dr. Perlin").)

For these reasons, I conclude that the ALJ properly applied the treating physician rule in

providing Dr. Perlin's opinions "little weight."

### ii.     Dr. Tina Chieco

Ms. Claudio also objects to the ALJ's decision to not assign controlling weight to the

opinions of her treating podiatrist, Dr. Tina Chieco of Footcare Associates.  (*See* ECF No. 19-2

at 18-19.)  Ms. Claudio contends that the ALJ erred in assigning "minimal weight" to a July,

2013 report from Dr. Chieco noting as follows:

> Ms. [Claudio] has been a patient of mine since 10/12/12.  She presented with
> multiple health issues [and] much difficulty walking.  She walks [with] a cane [and]
> a limp.  She is in constant pain and we have exhausted most measures to try to treat
> her.  [Ms. Claudio] suffers from osteoporosis, gouty arthritis, pinched nerves in her
> back, calcaneal spurs, and plantar fasciitis in her feet bilaterally.  She had prev.
> [indecipherable] on her feet years ago which did not help.  We have tried multiple
> injections which have not helped.  She was sent for shoes, inserts, braces etc. no
> help [sic].  She is on multiple meds and is now very depressed since nothing has
> helped her.  [Ms. Claudio] is a compliant patient.  She keeps all her [appointments].
> She does whatever treatment plan that's prescribed to the fullest.  Her conditions
> and mental depression [are] making it extremely difficult to have a "quality of life."
> She is a lovely person and loving mother.  Please consider her application for
> disability.

(Tr. at 658.)  The ALJ justified her decision to disregard Dr. Chieco's opinion on the ground that

"Dr. Chieco only asked that the claimant's application for disability be 'considered' and did not

offer a medical opinion on her standing or walking abilities."  (ALJ Decision, Tr. at 46.)[4]

---

[4] Ms. Claudio also contends that the ALJ misapplied the treating physician rule in
disregarding the opinion of Dr. Robert Schwartz, a physician from Dr. Chieco's office, that Ms.
Claudio used a cane and could not walk without pain (*see* Tr. at 590 (prescription slip noting that
"[Ms. Claudio cannot walk [without] pain . . . [and] uses [a] cane]").  (ECF No. 19-2 at 18).
There is no indication in the record, however, that Ms. Claudio was a regular patient of Dr.
Schwartz.  Indeed, the only notation of his involvement with Ms. Claudio in the record are two
prescription slips dated May 30, 2013.  (*See* Tr. at 588, 590.)  Further, the letter from Dr. Chieco
in the record avers that Ms. Claudio is a patient of hers, not of Dr. Schwartz.  (*See* ECF No. 19-2
at 8 (letter from Dr. Chieco noting that Ms. Claudio has been "[her] patient" for nearly nine
months).)  As such, Dr. Schwartz is not a "treating physician" within the meaning of the

The ALJ erred in her weight assignment to Dr. Chieco's opinion. In particular, her conclusion that Dr. Chieco "did not offer a medical opinion on [Ms. Claudio's] standing or walking abilities" (ALJ Decision, Tr. at 46) is incorrect. As noted above, Dr. Chieco wrote that Ms. Claudio had "much difficulty walking" and "walks with a cane and a limp." (*See* Tr. at 658-59.) Dr. Chieco also provided a fairly comprehensive description of Ms. Claudio's difficulties, including foot ailments that fall squarely within a podiatrist's area of specialty, including calcaneal spurs (i.e., heel spurs) and plantar fasciitis. (*See id.*) Finally, Dr. Chieco also noted that her office had attempted to treat Ms. Claudio's ailments for some time, all to no avail. (*See id.*) The ALJ needed to provide a "good reason" for declining to credit her opinion. *See Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008). Given that her reason for discounting Dr. Chieco's opinion was demonstrably incorrect, she failed to do so. The ALJ also erred in failing to apply the *Greek* factors in determining what weight to provide to Dr. Chieco's opinions. In particular, she failed to consider the length of Dr. Chieco's treatment of Ms. Claudio, the evidence supporting Dr. Chieco's opinion, and Dr. Chieco's specialty in podiatry. The ALJ therefore misapplied the treating physician rule in her consideration of Dr. Chieco's opinions.

### iii.      Whether Remand is Necessary

Although misapplication of the treating physician rule generally warrants remand, *see, e.g.*, *Hidalgo v. Bowen*, 822 F.2d 294, 298 (2d Cir. 1987) (remanding case due to ALJ's failure to properly apply treating physician rule), "[r]emand is unnecessary . . . '[w]here application of

---

applicable regulations. *See Garcia v. Barnhart*, No. 01 CIV.8300 GEL, 2003 WL 68040, at *5 n. 4 (S.D.N.Y. Jan. 7, 2003) ("Doctors who see a patient only once do not have a chance to develop an ongoing relationship with the patient, and therefore are not generally considered treating physicians."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (declining to treat doctor as treating physician because of lack of "clear evidence that [the doctor's] involvement with [the plaintiff] extended beyond [his] writing one letter" on the patient's behalf).

the correct legal standard could lead only to one conclusion'" *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (quoting *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998)). Here, however, I cannot comfortably conclude that the ALJ's correct application of the treating physician rule to Dr. Chieco's opinion could have led only to one conclusion. Remand is therefore required.

The ALJ's opinion concerning the impact of Ms. Claudio's ailments likely would have differed had she properly considered Dr. Chieco's findings. The ALJ concluded that Ms. Claudio had the capacity to "stand and walk [four] hours[,] occasionally climb ramps and stairs" and "occasional[ly] balanc[e]." (ALJ Decision, Tr. at 42.) These conclusions supported her determination that Ms. Claudio was capable of performing "light work." (*Id.*) In contrast, Dr. Chieco reported Ms. Claudio had "much difficulty walking" and required a cane to ambulate. (Tr. at 658.) Even with these accommodations, Dr. Chieco noted, Ms. Claudio still walked with a "limp" and suffered from "constant pain." (*Id.*) Had the ALJ properly considered Dr. Chieco's opinion, she might have adopted it, which would likely have led to a different assessment of Ms. Claudio's capabilities.

To be sure, I cannot be certain that the ALJ's proper consideration of Dr. Chieco's opinion would require a different result on the merits. Complying with the treating physician rule does not necessarily mean according the physician's opinion controlling weight. Further, the vocational expert testified at Ms. Claudio's hearing that she should be able to perform the jobs the ALJ identified in her decision even "if she was required to use a cane to ambulate." (*See* Tr. at 91-92 (the vocational expert testified that Ms. Claudio could work as an "extrusion operator, assembler and . . . production solderer" even if she required a cane to ambulate because "[t]hose are bench jobs that don't require waking as part of the job"). On the other side of the scale, I cannot be certain that Ms. Claudio's injuries are so limited. Ms. Claudio testified that

she now required a wheelchair.  (Tr. at 67.)  The vocational expert testified that Ms. Claudio's use of a wheelchair could disqualify her from jobs she could otherwise perform.  (Tr. at 92.) Further, the ALJ did not conclude that Ms. Claudio would be able to perform the jobs set out in her opinion even if she required the use of a cane to ambulate.  I therefore cannot presuppose what decision she would have made regarding Ms. Claudio's functional capacity had she properly applied the treating physician rule with respect to Dr. Chieco's opinion.  Given these differing considerations on both sides of the ledger, I cannot conclude that application of the proper legal standard could have led only to one conclusion.

For these reasons, remand is required to allow the ALJ to assess properly the weight to be given to Dr. Chieco's opinions.

### B.  Remaining Grounds

Ms. Claudio also contends that the ALJ erred in failing to consider the effect of all of her medically determinable impairments in formulating her RFC, among other things.  I need not reach these issues as I have already determined that the case must be remanded for the reasons discussed above.  I express no view on whether the ALJ should give controlling weight to Dr. Chieco's opinions or on any other issues except those expressly addressed by this ruling.

## IV.     Conclusion

Ms. Claudio's motion for an order reversing or remanding the Commissioner's decision (ECF No. 19) is GRANTED, and the Commissioner's motion to affirm that decision (ECF No. 22) is DENIED.  The case is hereby REMANDED.


IT IS SO ORDERED.

                              /s/
                         Michael P. Shea, U.S.D.J.

14

Dated:        Hartford, Connecticut
               July 18, 2018